Shelly Ann ADKINS, Plaintiff–Appellant,

v.

Kenneth RODRIGUEZ, also known as Kenny Rodriguez, Defendant–Appellee,

**and**

Harold Martinez; John Hurtado; Michael Duran, also known as Michael Durand; Kevin Martinez; Xavier Sandoval; William Reiners; Neal Cocco, as County Commissioners for Huerfano County, Defendants.

No. 94–1328.

United States Court of Appeals, Tenth Circuit.

July 6, 1995.

---

**6.** On appeal plaintiff asserts that defendant violated its Rules 61–B, 801, and O.

James M. Croshal, Gradisar, Trechter, Ripperger & Croshal, Pueblo, CO, for plaintiff-appellant.

Robert M. Liechty (Theodore S. Halaby with him on the brief), Halaby Cross Liechty Schluter & Buck, Denver, CO, for defendant-appellee Rodriguez.

Before MOORE and LOGAN, Circuit Judges, and DAUGHERTY, District Judge.*

JOHN P. MOORE, Circuit Judge.

Shelly Ann Adkins appeals the dismissal of her § 1983 complaint. She contends that while she was incarcerated, Kenneth Rodriguez, a prison deputy, violated her rights to privacy and to be free of sexual intimidation as guaranteed by the First, Third, Fourth, Fifth, Eighth, Ninth, and Fourteenth amendments. Although Ms. Adkins urges us to free her claim from the sole confines of the Eighth Amendment, neither the facts of the case nor the law provides support to do so. We, therefore, affirm.

From January 6, 1990, through March 22, 1990, Ms. Adkins was serving a sentence for a felony conviction at the Huerfano County Jail. During that time, Deputy Rodriguez, a trainee in the Huerfano County Sheriff's Department, made verbal comments to Ms. Adkins about her body, his own sexual prowess, and his sexual conquests. Ms. Adkins complained to Sergeant Deborah Garcia, a detention officer and dispatcher at the jail. Sergeant Garcia immediately spoke to Deputy Rodriguez, telling him male guards should use the intercom to speak to female prisoners and confine their conversations to business matters.[1] Sergeant Garcia told Deputy Rod-

---

* The Honorable Frederick A. Daugherty, Senior Judge, United States District Court for the Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

1. In fact, Deputy Rodriguez had used the intercom to address Ms. Adkins, asking her, as overheard by other inmates, if she still loved him.

riguez to "stay completely away from the cell." Despite these instructions, Deputy Rodriguez resumed making sexually suggestive comments to Ms. Adkins after she returned to the facility.[2]

On March 22, the specific incident precipitating this lawsuit occurred. Working the graveyard shift with Sergeant Miguel Duran, who had fallen asleep, Deputy Rodriguez removed the keys to the cells in A block where female prisoners are housed. After checking her neighbor's cell, Deputy Rodriguez entered Ms. Adkins' cell. As he stood over her bed looking at her, Ms. Adkins opened her eyes and asked him what he was doing. He answered he was checking on her, and as he left, told her, "By the way, you have nice breasts." Ms. Adkins immediately informed Sergeant Garcia, who summoned Deputy Rodriguez.

Despite Deputy Rodriguez's explanation he heard Ms. Adkins moaning in pain and entered her cell to bring her medication for a toothache, Captain Robert Martinez immediately suspended him for a week beginning on March 22 to complete an internal investigation. On March 26, 1990, Sheriff Harold Martinez recommended Deputy Rodriguez resign or be terminated, citing the liability created by his inability to follow the rules. Deputy Rodriguez resigned that same day.

The district court dismissed Ms. Adkins' complaint against defendant Rodriguez[3] finding no clearly established right under the Eighth Amendment at the time of his actions for a prisoner to be free of verbal sexual harassment. Recognizing that "extreme deprivations," *Whitley v. Albers*, 475 U.S. 312, 320, 106 S.Ct. 1078, 1084–85, 89 L.Ed.2d 251 (1986), must underlie a conditions of confinement claim under the Eighth Amendment, the district court was constrained to construe Ms. Adkins' complaint to suggest she "was denied 'the minimal civilized measure of life's necessities,'" quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). The court further reasoned, because allegations of sexual harass-

ment do not state a section 1983 violation in an *employment* context, *Poe v. Haydon*, 853 F.2d 418 (6th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989); therefore, Ms. Adkins could not set forth a claim showing a clearly established right to be free of sexual harassment in a prison setting. Upon this basis, the court granted defendant qualified immunity from suit.

In this appeal, Ms. Adkins contends the right of privacy is not entirely extinguished in a prison setting nor exclusively bounded by the contours of the Eighth Amendment. She relies upon *Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir.1982) (per curiam), which stated, "[a]lthough the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether." While conceding she has found no case involving an Eighth Amendment violation absent prisoner contact or touching, Ms. Adkins characterizes the implicit threat within the alleged sexual harassment as force sufficient to amount to a type of physical assault.

■ Our de novo review of the district court's granting summary judgment of Rodriguez's qualified immunity defense proceeds "somewhat differently than other summary judgment rulings." *Hannula v. City of Lakewood*, 907 F.2d 129, 130 (10th Cir.1990). Having raised the defense of qualified immunity, defendant then places the onus on the plaintiff to establish defendant has violated a clearly established law. *Hovater v. Robinson*, 1 F.3d 1063, 1066 (10th Cir.1993). Because qualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset, we have stated, "[t]he question of qualified immunity therefore dovetails almost precisely with the substantive inquiry in a section 1983 action; both depend on the specific contours of the constitutional right at issue." *Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir.1995).

■ Consequently, Ms. Adkins bears the burden of establishing that in 1990, she

---

2. During the first half of March, Ms. Adkins had to attend another court proceeding in Fremont County, Colorado.

3. We do not address Ms. Adkins' claims against other county officials, the district court having dismissed them as well. Ms. Adkins has not raised them in this appeal.

had a clearly established right to be free from verbal sexual harassment while an inmate at the Huerfano County Jail. Although she generally invokes the First, Third, Fourth, Fifth, Ninth, and Fourteenth Amendments, her claim remains bounded by the Eighth Amendment, the "explicit textual source of constitutional protection," *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989), in the prison context.[4] "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, —— U.S. ——, ——, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993).

■ Guided by "contemporary standards of decency," *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976), the Court has addressed those minimal standards of providing humane conditions of confinement, *Helling*, —— U.S. at ——, 113 S.Ct. at 2480, and prison officials' duties to assure the safety of inmates. *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200–01, 82 L.Ed.2d 393 (1984). Even under these parameters, the Court will find an Eighth Amendment violation only when the alleged deprivation is "objectively, 'sufficiently serious,'" and the prison official acts with "'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, —— U.S. ——, ——, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 302–03, 111 S.Ct. 2321, 2323–24, 2326–27, 115 L.Ed.2d 271 (1991)). In *Farmer* the Court resolved the meaning of the deliberate indifference standard. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, —— U.S. at ——, 114 S.Ct. at 1984.

Here, Ms. Adkins alleged the sexual harassment and the unauthorized appearance of Deputy Rodriguez in her cell violated her rights "to be free from threats of violence and sexual assault and/or sexual intimidation, to be free from cruel and unusual punishment, to be free from unjustified harassment." While she has described outrageous and unacceptable conduct by a jailer, we must find the connection between those acts and the constitutional right violated. "[N]ot ... every malevolent touch by a prison guard gives rise to a federal cause of action.... The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9–10, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (internal quotation marks and citations omitted; emphasis supplied).

Although Ms. Adkins did not allege defendant touched her, she maintains his verbal abuse is tantamount to the physical intimidation proscribed in *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir.1980) (Eighth Amendment includes inmates' right to reasonably safe environment), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). However, in the context of Eighth Amendment precedent, under the facts alleged here, we cannot infuse defendant's words of sexual harassment with the sort of violence or threats of violence cognizable in the conditions of confinement cases the Court has addressed. *See, e.g., Hudson*, 503 U.S. at 1, 112 S.Ct. at 996 (use of excessive force against prisoner beaten by prison guards may constitute cruel and unusual punishment even if inmate does not suffer serious bodily injury). Nor does our own precedent upon which Ms. Adkins relies, *Cumbey*, 684 F.2d at 712, and *Hovater*, 1 F.3d at 1063, support her claim.

Although we stated in *Cumbey* inmates have a right to privacy limited by legitimate penological interests in prison security, the statement was addressed to a threshold determination whether plaintiff's entire action

---

4. Indeed, Ms. Adkins' allegations are insufficient under any but the Eighth Amendment. For example, she does not allege the violation of her right of privacy arose out of an unreasonable search or seizure under the Fourth Amendment or she was denied substantive due process under the Fourteenth Amendment when she was sexually harassed.

was properly dismissed as frivolous. Thus, we vacated a portion of a district court's order dismissing an inmate's complaint that female guards' regular viewing of male inmates engaged in personal activities does not "necessarily fall short of a cognizable constitutional claim." 684 F.2d at 714.

In *Hovater*, we upheld the grant of qualified immunity to a sheriff whose detention officer forcibly sodomized a female inmate in the jail he supervised. Although the claim there was not asserted against the perpetrator as here, the case provides us a guide because we applied the deliberate indifference standard. We concluded while "an inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards," 1 F.3d at 1068, absent the allegation defendant knew his detention officer posed a threat of safety to female inmates, plaintiff failed to meet her burden of establishing a constitutional violation. Ms. Adkins' allegations are similarly flawed because she did not establish the single invasion of her cell constituted the deliberate indifference required for a violation of her Eighth Amendment rights. The district court therefore properly granted summary judgment on defendant's affirmative defense of qualified immunity.

We AFFIRM.