**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 1 1998**

**PATRICK FISHER**
Clerk

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

SUSAN BARNEY, KATHY
CHRISTENSEN,

      Plaintiffs-Appellants,

v.

GERALD R. PULSIPHER,
individually and in his Official
Capacity,

      Defendant,

BOX ELDER COUNTY, UTAH, a
political subdivision of the State of
Utah; ROBERT E. LIMB; LEE
ALLEN, Commissioner, in his official
capacity; JAMES WHITE,
Commissioner, in his official capacity;
ALLEN JENSEN, Commissioner, in
his official capacity,

      Defendants-Appellees.

No. 96-4192

---

Appeal from the United States District Court
for the District of Utah
(D.C. No. 94-CV-128)

---

Kathryn Collard, of The Law Firm of Kathryn Collard, L.C., Salt Lake City, Utah
(David Bert Havas and Sharon S. Sipes, of Gridley, Ward, Havas, Hamilton &
Shaw, Ogden, Utah, with her on the brief), for Plaintiffs-Appellants.

Karra J. Porter, of Christensen & Jensen, P.C. (Dale J. Lambert, of Christensen & Jensen, with her on the brief), Salt Lake City, Utah, for Defendants-Appellees.

---

Before **SEYMOUR**, Chief Judge, **ANDERSON,** and **HENRY**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

While serving 48-hour sentences for minor offenses at Box Elder County Jail in Utah, Kathy Christensen and Susan Barney were on separate occasions sexually assaulted by jailer Gerald Pulsipher. Ms. Christensen and Ms. Barney each brought suit against Gerald Pulsipher, Box Elder County, Sheriff Robert Limb, and County Commissioners Lee Allen, James White, and Allen Jensen under 42 U.S.C. § 1983 alleging violations under the First, Eighth, Ninth, and Fourteenth Amendments based on Mr. Pulsipher's sexual assault and other conditions of confinement arising out of their two-day incarcerations. The two actions were consolidated, and all defendants except Mr. Pulsipher moved for summary judgment. The district court granted the motion. Ms. Christensen and Ms. Barney appeal,[1] and we affirm.

## I

In accordance with state law requiring "the separation of prisoners by sex," Utah Stat. Ann. § 17-22-5 (1995 repl.), women inmates at Box Elder County Jail are placed in solitary confinement in a cell specifically designated for females.

---

[1] Ms. Barney's and Ms. Christensen's complaints also alleged various pendent state law claims. The parties stipulated to the dismissal of these claims against all defendants except Mr. Pulsipher, and the district court dismissed the state law claims on October 11, 1995. Aplt. App. at 559. The district court certified the appeal under Fed. R. Civ. P. 54(b) and stayed the trial of Mr. Pulsipher pending the outcome.

The female cell is eight-by-eight feet in dimension, and the door to the cell contains a small window which is covered by a manilla envelope taped to the outside of the door. Below the covered window is a small opening with a trap door which is used to provide inmates a food tray. The cell is located on the first floor of the jail adjacent to the jail officer's desk. On the separate occasions Ms. Barney and Ms. Christensen were confined at Box Elder County Jail, they each allege the following inadequate conditions:

> The mattress was soiled and torn; the pillow filthy and uncovered by a pillow case; there was no clean place for plaintiffs to place their clothing when they went to bed; the sink, toilet, shower fixtures and soap were dirty; there was profanity scribbled on the walls of the cell; the lighting was inadequate and the air in the cell during the summer months when the plaintiffs were confined there, was stifling due to the lack of any adequate circulation, ventilation, or air conditioning in the cell, and the food was cold and unappetizing.

Aplt. Br. at 14.

Several closed circuit television cameras are in the jail and linked to monitors in the dispatch area to aid jail officials in maintaining the security of the facility. No cameras monitor the outside exercise area commonly known as the "bullpen." Aplt. App. at 216-17, 499. Although dispatchers generally watch the monitors in concert with their dispatch duties, they are under no obligation to view them continuously.

-4-

The Jail Policies and Procedures Manual specifically instructs jailers to "give notification prior to entering the cell blocks of the opposite sex" to the dispatcher who "will monitor the cell block." Id. at 230-31. Moreover, male jailers are prohibited from "remov[ing] female inmates from their cells without another officer being physically present." Id. at 229. Ordinarily two jailers are required to be on duty per shift, but when one jailer is sick or on vacation a second jailer is usually not called in due to understaffing and budgetary constraints. The manual further prohibits jailers from accepting sex or other favors from prisoners, forbids staff members from taking any prisoners out of the jail for any reason except to perform authorized jail work assignments, and prohibits discrimination against any prisoner on the basis of sex.

As a result of overcrowding in the jail, the indoor exercise area and library are used to house overflow male prisoners, and women are therefore excluded from using these spaces. Because of the lack of monitoring and services available to women inmates, a report evaluating the jail concluded "[t]he present configuration of space dictates that the facility not house women inmates for periods of time longer than several hours." Aplt. App. at 501. Recognizing that the facilities at Box Elder County Jail are inadequate for holding women prisoners for any considerable length of time, Sheriff Limb ordinarily follows a "verbal policy" of confining only women who need to be detained for 24-36 hours at the

-5-

jail. Id. at 212-13. The County usually contracts out to jails in neighboring counties to house women prisoners sentenced for longer periods of time unless these jails are full, in which case female inmates are kept at Box Elder County Jail.

Early in the morning of May 15, 1993, Kathy Christensen arrived at Box Elder County Jail to serve a 48-hour sentence for a DUI conviction and was placed in the female cell. Later that day, Gerald Pulsipher, the only jailer on duty at the time, removed Ms. Christensen from her cell without informing the dispatcher as required by jail policy and led her outside to the unmonitored "bullpen" area where he sexually assaulted her. Mr. Pulsipher threatened to keep Ms. Christensen in jail longer than 48 hours if she did not perform oral sex as he demanded. After completing her sentence, Ms. Christensen did not report the incident of assault to the County.

On July 10, 1993, Susan Barney was placed in the female cell at Box Elder County Jail to serve a 48-hour sentence for shoplifting. Mr. Pulsipher, who once again was the only jailer on duty, took Ms. Barney to the same unmonitored area without informing the dispatcher and sexually assaulted her. Ms. Barney also did not report the incident to the County upon her release. However, Ms. Barney showed her drug counselor a sexually explicit note Mr. Pulsipher had written her while in jail and told her counselor about the assault. The counselor reported Mr.

Pulsipher's conduct to Ms. Barney's probation officer, who in turn reported the incident to Sheriff Limb. The County subsequently learned that Ms. Christensen had also been previously assaulted by Mr. Pulsipher.

On August 24, 1993, Sheriff Limb terminated Mr. Pulsipher's employment. Criminal charges were filed against Mr. Pulsipher, who pled guilty to forcible sexual abuse of Ms. Christensen. As part of the plea agreement, the criminal charges relating to the sexual assault of Ms. Barney were dismissed.

During the time Mr. Pulsipher was employed by the Box Elder County Sheriff's Department, Utah law required all peace officers to be certified and successfully complete a basic training course at a certified academy. See Utah Code Ann. § 67-15-7 (1991) (subsequently amended and renumbered as Utah Code Ann. § 53-6-205 (1994)). Before being accepted for admission to a state certified training program, the applicant must undergo a background investigation, which includes a criminal history check, to determine the applicant's "good moral character." Id. § 67-15-6. If the criminal history check reveals convictions for crimes punishable by imprisonment at a state or federal penitentiary or an offense involving dishonesty, unlawful sexual conduct, physical violence, or drugs, the applicant is denied admission. Id.

Mr. Pulsipher was accepted for admission at the Utah Law Enforcement Academy of Weber State University, a state certified basic training program. The

background investigation on Mr. Pulsipher turned up one arrest for possession of alcohol at age seventeen and several speeding tickets, but nothing serious enough to deny him admission to the academy. Upon successfully graduating from the academy, Mr. Pulsipher was certified as a peace officer.

Mr. Pulsipher was hired as a Deputy Sheriff by the Box Elder County Sheriff's Department in 1991. The department followed its standard procedure in hiring Mr. Pulsipher. After he submitted an application, Sergeant Yeates interviewed him, checked his application, and contacted his references who all provided positive statements about him. There was no policy in effect requiring written letters of recommendations or written reports of the Sergeant's conversations with these references. Mr. Pulsipher's application was then sent to Sheriff Limb for final approval.

Mr. Pulsipher satisfactorily completed the basic correctional officer course offered by the Department of Corrections, fulfilling the minimum requirements to exercise peace officer authority as a correctional officer in the state of Utah. During the course, Mr. Pulsipher received instruction on offenders' rights, staff/inmate relations, sexual harassment, and cross-gender search and supervision. He also took continuing education courses throughout his employment at Box Elder County Jail to maintain his state certification as a peace officer.

Mr. Pulsipher received a copy of the Jail Policy and Procedures Manual in November 1992, and he was required to read it in its entirety and "be familiar with its contents and comply with its directives." Aplt. App. at 226. In an employee performance appraisal dated February 2, 1993, Mr. Pulsipher received satisfactory to above satisfactory grades in all categories. Before the incidents involving Ms. Christensen and Ms. Barney, Mr. Pulsipher had not been the subject of any disciplinary action and Sheriff Limb considered him one of his better officers.

James White, Lee Allen, and Allen Jensen were the County Commissioners at the time the events underlying this appeal took place. The Commissioners were responsible for funding the jail but did not exercise day-to-day supervision or administration of the jail, which was left entirely to Sheriff Limb. Under state law, the Sheriff is charged with keeping the county jail and its prisoners and is the final policymaking authority for jail operations. See Utah Stat. Ann. § 17-22-2 to -4; Aplt. App. at 227.

The sexual assaults on Ms. Christensen and Ms. Barney were the only incidents of sexual misconduct by Box Elder County jailers of which Sheriff Limb was aware during his more than thirty-year tenure as the County's sheriff. The Commissioners likewise lacked knowledge of any alleged sexual misconduct by jailers or any complaints about inadequate conditions at the jail for female

inmates prior to the Christensen and Barney incidents. The record reveals the only problem Sheriff Limb mentioned to one of the Commissioners was that of overcrowding, which resulted in his having to send prisoners elsewhere due to lack of space in the jail.

Susan Barney brought this action against Gerald Pulsipher, Box Elder County, Sheriff Limb and Commissioners Allen, White, and Jensen in their official and individual capacities under 42 U.S.C. § 1983 for the sexual assault by Mr. Pulsipher and other conditions of confinement arising out of her two-day incarceration at Box Elder County Jail.[2] Ms. Barney alleges that defendants' inadequate policies and facilities for women inmates, their failure to adequately staff, train, and supervise jailers, and their failure to take reasonable measures to protect her well-being and bodily integrity violated her rights under the First, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution. She seeks monetary damages, declaratory and injunctive relief, and attorneys fees and costs.

Ms. Christensen also brought a section 1983 action against the same defendants, alleging similar constitutional violations and seeking similar relief for

---

[2] Ms. Barney also named as defendants unknown individuals, John Does I-IV, who supervised and trained Mr. Pulsipher.

her two-day incarceration at the jail. These actions were subsequently consolidated by the district court.

The district court granted the motions of the County, Sheriff Limb, and Commissioners Allen, White, and Jensen for summary judgment. The court was persuaded that defendants had not acted with the required "deliberate indifference" to violate the Eighth Amendment, noting the absence of any previously reported incidents of sexual misconduct by Mr. Pulsipher or any jailers, and holding that the conditions of plaintiffs' confinement did not rise to the level of cruel and unusual punishment in light of the brevity of their stay. The court further found no evidence in the record demonstrating that jail conditions for female prisoners violated clearly established equal protection rights, and concluded that defendants' policy of holding women inmates in solitary confinement when arrangements could not be made to transport them to other jails was reasonably related to the legitimate penal interest of providing separate housing for men and women prisoners. The court thus granted the individual defendants qualified immunity on all damage claims and granted judgment in favor of defendants on all claims in the complaint.[3]

---

[3] Ms. Barney and Ms. Christensen contend the district court failed to address their claims for declaratory and injunctive relief. Plaintiffs lack standing to asssert these claims. A "plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured

(continued...)

## II

We begin our review with Ms. Barney's and Ms. Christensen's claims against the County and Sheriff Limb and the Commissioners in their official capacities.[4]  We review a district court's grant of summary judgment de novo, viewing all the evidence in the light most favorable to the nonmoving party. Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 797 (10th Cir. 1997).  Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Id.  The moving party does not have to negate the nonmovant's claims in order to obtain summary judgment.  Allen v. Muskogee, 119 F.3d 837, 840 (10th Cir. 1997).  "[T]he movant only bears the initial burden of '"showing"--that is pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case.'"  Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

[3](...continued)
in the future."  Facio v. Jones, 929 F.2d 541, 544 (10th Cir. 1991); see also City of Los Angeles v Lyons, 461 U.S. 95, 104-05 (1983); Green v. Branson, 108 F.3d 1296, 1299-1300 (10th Cir. 1997).  Plaintiffs have failed to so demonstrate, and we decline to speculate that Ms. Barney and Ms. Christensen will likely end up in Box Elder County Jail again some time in the future.  See Lyons, 461 U.S. at 104-05.  The only claims before us therefore are plaintiffs' claims for damages.

[4] A suit against individual defendants in their official capacities is essentially the same as a suit against the County.  See Monell v. Department of Soc. Servs., 436 U.S. 658, 690 n.55 (1978); Starrett v. Wadley, 876 F.2d 808, 813 (10th Cir. 1989).

"If the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).

The County may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees. See Monell v. Department of Soc. Servs., 436 U.S. 690, 694 (1978). The Supreme Court recently revisited the issue of municipal liability and held that a municipality is liable only when the official policy is the "'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and deprivation of federal rights." Board of County Comm'rs v. Brown, 117 S. Ct. 1382, 1388 (1997).

The Supreme Court observed in Brown that when an official municipal policy itself violates federal law, issues of culpability and causation are straightforward; simply proving the existence of the unlawful policy puts an end to the question. See id. at 1388-89. The Court distinguished the above situation from a case in which the policy at issue is lawful on its face and the municipality therefore has not directly inflicted the injury through its own

-13-

actions. The Court concluded that determining culpability and causation in the latter circumstance "present[s] much more difficult problems of proof." Id. at 1389. In these situations, in keeping with the dictates of Monell, the Court believed that "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Id. Ms. Barney and Ms. Christensen do not contend the County maintains an official policy of sexually harassing, assaulting, or discriminating against women prisoners. Nor do they contend Sheriff Limb authorized Mr. Pulsipher's sexual assaults. Rather, plaintiffs essentially argue the County is liable for its conduct in hiring and training Mr. Pulsipher. Accordingly, this situation falls within that category of cases in which the Supreme Court has mandated that "rigorous standards of culpability and causation must be applied." Id. at 1389.

We turn first to the claim based on the alleged inadequate training. In City of Canton v. Harris, 489 U.S. 378 (1989), the Supreme Court held that municipal liability based on a policy of inadequate training requires proof of the municipality's "deliberate indifference" to its inhabitants--i.e., the failure to train must "reflect[ ] a 'deliberate' or 'conscious' choice by a municipality." Id. at

-14-

389.[5] The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. See Brown, 117 S. Ct. at 1390. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. Id. In a "narrow range of circumstances," however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations. Brown, 117 S. Ct. at 1391; Canton, 489 U.S. at 390 & n.10.

Here, plaintiffs' failure-to-train claim fails because the record contains no evidence tending to show that the County acted with deliberate indifference. The

---

[5] As we discuss infra, a finding of "deliberate indifference" is also required to hold prison officials liable for violating inmates' Eighth Amendment right to humane conditions of confinement. Deliberate indifference, however, is defined differently for Eighth Amendment and municipal liability purposes. In the prison conditions context, deliberate indifference is a subjective standard requiring actual knowledge of a risk by the official. In the municipal liability context, deliberate indifference is an objective standard which is satisified if the risk is so obvious that the official should have known of it. See generally Farmer v. Brennan, 511 U.S. 825, 840-42 (1994) (discussing City of Canton v. Harris, 489 U.S. 378 (1989)).

Sheriff and the Commissioners testified in their depositions they were unaware of any previous incidents involving the sexual assault of an inmate by a Box Elder County jailer or of any complaints about the treatment of women inmates at the jail. Plaintiffs proffered no evidence to the contrary. Consequently, no pattern of violations existed to put the County on notice that its training program was deficient in this regard.

In addition, this case does not fall within the narrow range of circumstances justifying a finding of deliberate indifference absent a pattern of violations. Mr. Pulsipher completed a state certified basic peace officer training program and a correctional officer course after he was hired, which included instruction on offenders' rights, staff/inmate relations, sexual harassment, and cross-gender search and supervision. Plaintiffs have not come forward with evidence pertaining to the adequacy of the instruction he received in these courses. We thus have no reason to conclude that Mr. Pulsipher received constitutionally deficient training. See Andrews v. Fowler, 98 F.3d 1069, 1077 (8th Cir. 1996). Even if the courses concerning gender issues and inmates' rights were less than adequate, we are not persuaded that a plainly obvious consequence of a deficient training program would be the sexual assault of inmates. Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior. See id. ("In light of the regular law

enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women.")

We next consider plaintiffs' claim based on the decision to hire Mr. Pulsipher. In <u>Brown</u>, the Supreme Court specifically examined the showing required to hold a municipality liable for a single inadequate hiring decision.[6] The Court emphasized the difference between failure-to-train and inadequate-hiring claims and refused to simply "import the reasoning of <u>Canton</u> into the hiring context." <u>Id.</u> at 1391. The Court observed that basing municipal liability on an official's failure to carefully scrutinze an application for employment poses the "greatest risk" that a municipality will be held liable for the actions of its employees rather than its own actions, since every injury inflicted by a municipal employee can be traced to hiring in a but-for sense. <u>Id.</u> at 1391, 1394. The Court therefore held that when reviewing hiring decisions, courts must take even greater care to adhere to stringent culpability and causation standards, <u>id.</u> at 1394, and carefully "test the link" between the policymaker's hiring decision and the particular injury alleged, <u>id.</u> at 1391.

---

[6] Plaintiffs cannot base their inadequate hiring claim on a pattern of poor hiring decisions since, as stated above, no previous incidents of sexual assault have occurred in the thirty-three years of Sheriff Limb's tenure.

Merely showing that a municipal officer engaged in less than careful scrutiny of an applicant resulting in a generalized risk of harm is not enough to meet the rigorous requirements of "deliberate indifference." Id. at 1392. Culpability requires a strong connection between the background of the particular applicant and the specific constitutional violation alleged. Establishing municipal liability in the hiring context requires a finding that "*this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." Id.[7]

Mr. Pulsipher's background investigation revealed an arrest at age seventeen for possession of alcohol and several speeding tickets. He completed a state certified basic training program, to which he would have been denied admission had he been convicted of any crimes involving unlawful sexual conduct

---

[7] We note that the focus of the inquiry in determining when a single poor hiring decision is sufficient to constitute deliberate indifference appears to be on the actual background of the individual applicant and not on the thoroughness or adequacy of the municipality's review of the application itself. As the Supreme Court took great pains to point out, unlike the obvious "risk from a particular glaring omission in a training regimen" (such as a failure to train a police officer in the use of deadly force), it is much harder to predict the consequences of a single instance of a municipality's failure to adequately screen an applicant. Brown, 117 S. Ct. at 1382. Whether or not an unsuitable applicant is ultimately hired depends more on his actual history than the actions or inactions of the municipality. Take, for example, a situation in which a hiring official completely fails to screen an application and hires an applicant, but the applicant actually has a spotless background. In such cases, the Court has stated that the hiring official cannot be said to have consciously disregarded an obvious risk that the applicant would inflict constitutional harm on the citizens of the municipality when even a thorough investigation would have revealed no cause for concern. Id. at 1391-92.

-18-

or physical violence. Plaintiffs have presented no evidence that Mr. Pulsipher's background could have led Sheriff Limb to conclude Mr. Pulsipher was highly likely to inflict sexual assault on female inmates if hired as a correctional officer. See id. at 1393 (applicant's pleas of guilty to various traffic violations and assault and battery, resisting arrest, and public drunkenness arising out of college fight did not make use of excessive force a plainly obvious consequence of decision to hire him as a police officer). The County is therefore not liable for Sheriff Limb's decision to hire Mr. Pulsipher.[8]

## III

Ms. Barney and Ms. Christensen also sued the Sheriff and the Commissioners in their individual capacities. Qualified immunity is an affirmative defense against section 1983 damage claims available to public

---

[8] We also reject plaintiffs' assertions that the County should be held liable for adopting an "official defacto policy," Aplt. Br. at 20, of permitting a single jail officer to be on duty alone when the second jailer is sick or on vacation, and for failing to adopt various policies to adequately supervise jailers and protect women prisoners, including notifying inmates of their rights to be free from sexual assault and providing formal avenues of complaint for inmates and formal sanctioning procedures for jailers. The record reveals no previous incidents of sexual harassment or assault of female inmates at Box Elder County Jail which would provide actual or constructive notice to the County that its one-jailer policy and failure to adopt certain policies would result in the specific injuries alleged here. Nor are we persuaded that a plainly obvious consequence of failing to adopt such policies or having one male jailer on duty is the sexual assault of female inmates. Cf. Hovater v. Robinson, 1 F.3d 1063, 1066 (10th Cir. 1993).

officials sued in their individual capacities. Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995). Government officials are shielded from liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Plaintiffs maintain the district court erred in granting qualified immunity to the individual defendants, contending defendants violated their clearly established rights under the Eighth Amendment and Equal Protection Clause.

"In analyzing qualified immunity claims, we first ask if a plaintiff has asserted the violation of a constitutional right at all, and then assess whether the right was clearly established at the time of a defendant's actions." Gehl Group v. Koby, 63 F.3d 1528, 1533 (10th Cir. 1995) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). "We review summary judgment decisions involving a qualified immunity defense somewhat differently than other summary judgment rulings." Hannula v. City of Lakewood, 907 F.2d 129, 130 (10th Cir. 1990). Once a defendant raises the defense, the plaintiff assumes the burden of "(1) coming forward with sufficient facts to show that the defendant's conduct violated the law; and (2) demonstrating that the relevant law was clearly established when the alleged violation occurred." Gehl Group, 63 F.3d at 1533. "Where a plaintiff fails to demonstrate that a defendant's conduct violated the law, we need not

reach the issue of whether the law was clearly established." Id.[9]  The district court here held that plaintiffs failed to state claims under the Eighth Amendment or the Equal Protection Clause, and granted qualified immunity on these grounds. We address plaintiffs' claims in turn.

## A.      Eighth Amendment

Prison officials are required to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety.  See Farmer v. Brennan, 511 U.S. 825, 832-33 (1994).  Plaintiffs contend Sheriff Limb and the Commissioners violated their Eighth Amendment rights by failing to protect them from Mr. Pulsipher's sexual harassment and assaults and by the inhumane conditions they allegedly suffered during their two-day incarcerations.[10]

---

[9] Deciding the "purely legal question" of whether a constitutional violation exists at all first allows courts "expeditiously to weed out" essentially meritless claims early in the proceedings.  Siegert v. Gilley, 500 U.S. 226, 232 (1991). Qualified immunity provides immunity from suit as well as from liability and serves the important purpose of protecting public officials from unnecessarily going forward with the costly burdens of trial.  Id.; Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995).

[10] Although plaintiffs generally invoke other constitutional amendments in their complaints, their claims concerning conditions of confinement "remain[ ] bounded by the Eighth Amendment, the explicit textual source of constitutional protection in the prison context."  Adkins v. Rodriguez, 59 F.3d 1034, 1037 (10th Cir. 1995) (internal quotations and citations omitted); see also Riddle v.

(continued...)

-21-

In order to hold prison officials liable for violating an inmate's right to humane conditions of confinement, two requirements must be met. First, the deprivation alleged must be objectively "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991), depriving the inmate of "'the minimal civilized measure of life's necessities,'" id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, the official must have a "sufficiently culpable state of mind," which in this context means the official must exhibit "deliberate indifference" to a substantial risk of serious harm to an inmate. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 297. Thus, the deliberate indifference standard in a prison-conditions case is a "subjective" and not an "objective" requirement. That is, a prison official is liable only if the "official knows of and disregards an excessive risk to inmate health and safety." Farmer, 511 U.S. at 837. It is not enough to establish that the official should have known of the risk of harm. Id.

With regard to plaintiffs' sexual assault claims,[11] we have expressly

_____

[10](...continued)
Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996) (inmate's claim of inadequate medical care analyzed under Eighth Amendment and not more general provisions of substantive due process).

[11] Although plaintiffs allege Mr. Pulsipher subjected them to severe verbal sexual harassment and intimidation, these acts of verbal harassment alone are not sufficient to state a claim under the Eighth Amendment. See Adkins, 59 F.3d at 1037. Plaintiffs' claims of verbal harassment are only actionable "[i]n combination" with the assaults. See, e.g., Women Prisoners v. District of

(continued...)

-22-

acknowledged that an "inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards." Hovater v. Robinson, 1 F.3d 1063, 1068 (10th Cir. 1993). Clearly plaintiffs' deprivations resulting from the sexual assaults are sufficiently serious to constitute a violation under the Eighth Amendment. Nevertheless, Ms. Barney and Ms. Christensen have not shown that Sheriff Limb and the Commissioners were deliberately indifferent in failing to protect them from Mr. Pulsipher's assaults. Plaintiffs maintain defendants knew of the substantial risk posed by permitting Mr. Pulsipher to be the sole guard on duty and consciously disregarded that risk. To support their claims of defendants' knowledge, plaintiffs rely primarily on defendants' official policy requiring two jailers to be present when female prisoners were removed from their cell.[12] This

---

[11](...continued)
Columbia, 877 F. Supp. 634, 665 (D.D.C. 1994) (observing that "when officers make sexual remarks in an environment where sexual assaults of women prisoners by officers are well known and inadequately addressed" such conduct "mutually heighten[s]" the injury to women prisoners), vacated in part, modified in part, 899 F. Supp. 659 (D.D.C. 1995), vacated in part and remanded, 93 F.3d 910 (D.C. Cir. 1996). We therefore focus on plaintiffs' sexual assault claims.

[12] Plaintiffs also point to a report stating that Box Elder County Jail was overcrowded, did not meet regulatory standards, lacked adequate monitoring, and was particularly inadequate for detaining female prisoners for extended lengths of time as evidence of the County's knowledge of the substantial risk of harm faced by female inmates at the jail. However, if a prison official responds reasonably to a risk of harm, he will not be held liable even if the harm ultimately is not prevented. Farmer, 511 U.S. at 844-45. ("A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men [and
(continued...)

policy, in plaintiffs' view, clearly reflects defendants' understanding that a substantial risk of sexual misconduct to female inmates existed when only one male jailer was present.

We explicitly rejected this argument in Hovater, which involved very similar facts and controls here. There, Mr. Robinson, a detention officer, called Ms. Hovater, a female inmate, from her cell to the library. In violation of jail policy which required that female inmates be accompanied by either a female officer or at least two male officers, Ms. Hovater was left alone with Mr. Robinson, who then sexually assaulted her. Id. at 1064-65. Prior to this incident, neither the sheriff nor the county commissioners knew of any complaints from female inmates about sexual misconduct by Mr. Robinson or any other jail officer. Id. at 1064. We held Ms. Hovater failed to establish that the sheriff and the county commissioners acted with deliberate indifference--i.e., that the defendants "disregarded an obvious risk to the safety of female inmates by allowing a single

_____

[12](...continued)
women] in safe custody under humane conditions.") (internal quotations and citations omitted). Sheriff Limb acknowledged these problems and took reasonable measures to alleviate the risk of harm to female inmates. He contracted out to neighboring county jails with better facilities for women and whenever possible detained women only for 24-36 hours at the jail. Ms. Barney's and Ms. Christensen's confinements exceeded this limit by only twelve hours. In light of the reasonable measures taken in response to the conditions listed in the report, plaintiffs cannot establish that County defendants acted with deliberate indifference.

-24-

male guard to have custody of a female inmate absent any indication that the guard would assault her." Id. at 1066.[13] We further stated:

> [T]he mere existence of the policy at issue does not establish an obvious risk that females left alone with male guards are likely to be assaulted.
>
> Sheriff Hill had no knowledge that Mr. Robinson was a threat to the female inmates. Any known harm could stem only from the mere fact of Mr. Robinson's gender. To find harm present in these circumstances would, in effect, require the conclusion that every male guard is a risk to the bodily integrity of a female inmate whenever the two are left alone. There is absolutely no evidence in this record to support that conclusion.

Id. at 1068.

Nor does the record here contain any evidence to indicate that male guards at Box Elder County Jail, if left alone with female inmates, posed a risk to their health and safety. As in Hovater, we decline to find knowledge by Sheriff Limb and the Commissioners of a substantial risk of harm from the mere fact of Mr. Pulsipher's gender. Without any evidence of sexual misconduct in Mr. Pulsipher's background or any evidence of previous incidents of sexual misconduct by Box Elder County jailers, plaintiffs have failed to raise a fact question on whether the Sheriff and the Commissioners acted with deliberate indifference under either an objective or subjective standard.

---

[13] Because Hovater was decided before the Supreme Court's decision in Farmer, we applied the objective test under the deliberate indifference standard.

With regard to the general conditions of confinement, plaintiffs specifically allege a filthy cell, inadequate lighting and ventilation, lack of enclosures around the shower and toilet, unappetizing food, and no access to recreational facilities. The Eighth Amendment "does not mandate comfortable prisons," and conditions imposed may be "restrictive and even harsh." Rhodes, 452 U.S. at 347, 349. An important factor in determining whether conditions of confinement meet constitutional standards is the length of the incarceration. Thus, a "filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months." Hutto v. Finney, 437 U.S. 678, 686-87 (1978). Courts have repeatedly held that similar and far worse conditions fail to state a claim because of the brief nature of the incarceration. See, e.g., Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994) (deplorably filthy and patently offensive cell with excrement and vomit not unconstitutional because conditions lasted only for 24 hours); White v. Nix, 7 F.3d 120, 121 (8th Cir. 1993) (eleven day stay in unsanitary cell not unconstitutional because of relative brevity of stay and availability of cleaning supplies); Harris v. Fleming, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (five day stay in "filthy, roach-infested cell" not unconstitutional); see also Ogbolu v. McLemore, 1997 WL 49449, at *2 (10th Cir. Feb. 2, 1997) (cold, wet, drafty, and unsanitary solitary cell for two days does not

violate Eighth Amendment). Plaintiffs' allegations simply do not rise to the level of a constitutional violation.[14]

## B.    Equal Protection

Ms. Barney and Ms. Christensen contend defendants discriminated against them on the basis of their sex in violation of the Equal Protection Clause by subjecting them to sexual harassment and assault,[15] placing them in solitary

_____

[14] Plaintiffs' reliance on Women Prisoners v. District of Columbia, 877 F. Supp. 634 (D.D.C. 1994), vacated in part, modified in part, 899 F. Supp. 659 (D.D.C. 1995), vacated in part and remanded, 93 F.3d 910 (D.C. Cir. 1996), to support their Eighth Amendment claims is misplaced. Women Prisoners involved repeated reports and incidents of prison guards sexually assaulting and harassing women inmates. Despite prison officials' knowledge of this longstanding abuse, the officials ignored the reports and took no reasonable measures to alleviate these conditions. See id. at 639-43, 664-67. As to the general conditions of confinement, the plaintiff class in Women Prisoners included prisoners incarcerated for longer periods of time and the conditions alleged were far more extensive and serious than the ones alleged here. See id. at 648-53, 670-72 (finding general prison conditions violated Eighth Amendment "not because they produce surroundings which are unattractive or food which is unappetizing" but "because they combine to create an unconstitutionally high exposure to illness or injury").

[15] Plaintiffs assert that sexual harassment and sexual assault are actionable as an equal protection violation under 42 U.S.C. § 1983 without a showing that a comparable group of males are likewise being harassed, citing Starrett v. Wadley, 876 F.2d 808, 814 (10th Cir. 1989). Starrett involved a suit brought by a female county employee against the county and her male supervisor for sexual harassment and retaliatory discharge. Id. at 812, 814. We are not confronted here with a charge of sexual harassment in the *employment* context. Claims of sexual harassment and assault of inmates by prison guards are more properly analyzed under the Eighth Amendment. See supra at pp. 21-22. The Equal Protection

(continued...)

-27-

confinement when male inmates are not ordinarily placed in solitary confinement, and denying them access to educational and recreational facilities and programs offered to male inmates. The Equal Protection Clause requires the government to treat similarly situated people alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them. See Gehl Group, 63 F.3d at 1538.

Plaintiffs have not come forward with any evidence indicating that women serving two-day sentences at Box Elder County Jail received treatment different from men serving similar lengths of time.[16] Nor have they presented evidence of the relative number of men and women prisoners, the average length of stays of men and women prisoners, and what programs are offered to male prisoners.

---

[15](...continued)
Clause in the prison-conditions context is usually invoked to remedy disparities in educational, vocational, and recreational programs offered to male and female inmates. See, e.g., Women Prisoners v. District of Columbia, 93 F.3d 910, 924-27 (D.C. Cir. 1996); Klinger v. Department of Corrections, 31 F.3d 727 (8th Cir. 1994).

[16] In responding to plaintiffs' Equal Protection argument, defendants rely on the majority opinions in Women Prisoners v. District of Columbia, 93 F.3d 910 (D.C. Cir. 1996), and Klinger v. Department of Corrections, 31 F.3d 727 (8th Cir. 1994). In view of our determination that plaintiffs have presented no evidence in support of their Equal Protection claim, we need not assess the analyses of the majority and dissenting opinions set out in those cases.

Absent any relevant information about male prisoners at Box Elder County Jail, plaintiffs cannot make the required threshold showing that they were treated differently from male inmates who were similarly situated to them. Plaintiffs' equal protection claims therefore fail. See Women Prisoners v. District of Columbia, 93 F.3d 910, 925-26 (D.C. Cir. 1996) (female inmates at co-correctional facility foreclosed from making equal protection claim because no evidence regarding programs available to male inmates at same facility).[17]

In sum, plaintiffs failed to meet their burden of presenting sufficient facts to show that Sheriff Limb and the Commissioners violated either the Eighth Amendment or the Equal Protection Clause. Consequently, the district court properly granted summary judgment for these defendants.[18]

---

[17] Moreover, considering that state law requires the separation of men and women inmates and that the jail houses primarily male prisoners while female inmates are ordinarily detained for only brief periods of time and contracted out to neighboring jails, the County defendants' policy of keeping women in solitary confinement reflects a legitimate and rational decision to provide for the safety of inmates and the efficient running of the jail. We hesitate to interfere with prison officials' decisions concerning the day-to-day administration of prisons, to which we must accord deference. See Turner v. Safley, 482 U.S. 78, 84-85 (1987).

[18] Defendants urged us to grant the Commissioners in their individual capacities absolute legislative immunity. Since we uphold summary judgment in favor of the Commissioners on the merits, we need not address this issue. We also find meritless plaintiffs' final argument that the district court's grant of summary judgment violated their right to a jury trial.

**IV**

As the County defendants readily concede, Mr. Pulsipher's conduct towards Ms. Barney and Ms. Christensen was inexcusable and "outrageous." Aplee Br. at 23. Such outrageous conduct by Mr. Pulsipher, without more, is not enough to impose liability on the County, or the Sheriff and the Commissioners in their individual capacities. Mr. Pulsipher has been criminally convicted for his behavior and the section 1983 suit against him is pending below. Ms. Barney and Ms. Christensen are therefore not left entirely without relief.

We **AFFIRM**.