**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 19, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| NORTHERN NEW MEXICANS PROTECTING LAND, WATER AND RIGHTS, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> UNITED STATES OF AMERICA; RYAN ZINKE, Secretary, U.S. Department of Interior; MICHAEL S. BLACK, Assistant Secretary, Bureau of Indian Affairs; WILLIAM WALKER, Regional Director, Bureau of Indian Affairs, Southwest office; and RAYMOND FRY, Superintendent, Northern Pueblo Agency,[*] <br><br> Defendants - Appellees. | No. 16-2047 <br> (D.C. No. 1:15-CV-00559-JB-LF) <br> (D. N.M.) |

**ORDER AND JUDGMENT**[**]

Before **TYMKOVICH**, Chief Judge, **BACHARACH** and **MORITZ**, Circuit Judges.

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Ryan Zinke and Michael S. Black are substituted for Sally Jewell and Lawrence S. Roberts as Appellees in this case.

[**] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

For decades, the San Ildefonso Pueblo and Santa Fe County have disputed whether certain county roads crossing San Ildefonso Pueblo lands are located on a public right-of-way, or if citizens of Santa Fe County (and others who use the roads) are doing so in trespass. This lawsuit began when the Bureau of Indian Affairs (BIA), acting on behalf of the Pueblo, sent a letter to Santa Fe County declaring that the County was in trespass for using the roads and encouraging the County to negotiate with the Pueblo for a right-of-way easement.

Northern New Mexicans Protecting Land, Water and Rights (the Northern New Mexicans), a nonprofit organization comprised of landowners who use the roads to access their homes, then brought suit against the Pueblo. The Northern New Mexicans claim the BIA's letter clouds title to their properties because the BIA has sided with the Pueblo on the question of whether the Pueblo can completely deny road access to non-Tribal lands.

The district court dismissed the Northern New Mexicans' complaint without prejudice, concluding that the organization lacked standing to bring its takings and quiet title claims (and the Northern New Mexicans' quiet title action was barred by sovereign immunity). The district court also concluded that—since the Quiet Title Act provides the exclusive remedy for claims challenging the United States' title to real property—the Northern New Mexicans' remaining claims were barred. The Northern New Mexicans appealed. Exercising

-2-

jurisdiction under § 1291, and finding several jurisdictional issues and pleading deficiencies with the Northern New Mexicans' case, we affirm the district court's decision. We conclude that the Northern New Mexicans' Administrative Procedure Act (APA) and Takings claims are not ripe for review, the Northern New Mexicans waived their quiet title claim, and the Northern New Mexicans do not have viable claims for their Equal Protection Clause and Fifth Amendment Due Process arguments.

## I. Background

The members of the Northern New Mexicans' organization access their private property via Santa Fe County roads 84, 84a, 84b, 84c, and Sandy Way, all of which cross San Ildefonso Pueblo lands. The parties dispute whether these roads are owned by the Pueblo—which would mean parties crossing them are trespassing on Pueblo territory—or whether the roads are located on public rights-of-way. This dispute is longstanding, dating back to at least 1965.

In August 1999, the Pueblo notified Santa Fe County that, in the Pueblo's view, the County lacked title to the lands. The Pueblo thus urged the County to negotiate an agreement that would allow the public to use the roads. The Pueblo also informed the County that absent an agreement, the Pueblo might enforce its right to exclude trespassers on Pueblo lands. The Pueblo and the County failed to reach an agreement.

Several years later, in 2013, the Superintendent of the Northern Pueblos Agency of the BIA sided with the Pueblo, stating its position in a letter to the County dated December 6, 2013. The letter notified the County that, in the BIA's view, the roads at issue were being used in trespass, and since no record existed of an application for an easement or right-of-way across Pueblo lands, the County should take action to resolve the trespass issue. The letter also encouraged the County to enter negotiations with the Pueblo to resolve the dispute quickly and thereby establish a legal basis for the County's use of Pueblo land.

The Northern New Mexicans then filed a complaint against the BIA in federal district court, alleging injury flowing from the BIA's letter. In particular, the Northern New Mexicans claimed the letter created a cloud on their members' titles and impeded their ability to convey their properties. After a hearing, the district court dismissed the complaint, concluding that the Northern New Mexicans lacked standing to pursue their Takings and quiet title claims. The court also concluded that the Northern New Mexicans' Quiet Title Act and other claims were barred by sovereign immunity, because the United States does not consent to suits involving Indian lands under the Quiet Title Act, and the Quiet Title Act provides the exclusive remedy for claims challenging the United States' interests in real property.

The Northern New Mexicans appealed and claim that the BIA's actions have impaired their members' rights to continue using the roads to access their property. Specifically, the Northern New Mexicans allege that their

> membership has received correspondences from title insurance companies advising that they will not insure the properties, thus sales are not permissible. Potential sales have fallen through because of clouded title and access. Title companies have refused to provide title insurance to [the organization's] members as a result of [the BIA]'s actions curtailing legal ingress/egress to member[s'] property and no adequate remedy at law exists to clear the clouds on their property titles.

Aplt. Br. at 5–6. We affirm the district court's decision.

## II. Analysis

In their complaint, the Northern New Mexicans asserted four separate claims: (1) a claim under the APA; (2) a claim under the Quiet Title Act; (3) a Fifth Amendment Takings claim; and (4) an Equal Protection claim. On appeal, the Northern New Mexicans add a claim under the Due Process Clause of the Fifth Amendment. The district court resolved the Northern New Mexicans' Takings and quiet title claims on standing grounds and concluded the Northern New Mexicans' other claims were barred by sovereign immunity. We affirm the district court, but on alternate grounds: the lack of a justiciable question. As we explain, no tangible dispute currently exists in this case. And it is axiomatic that for a federal court to exercise jurisdiction over a claim, "there must be a tangible

-5-

dispute that is capable of resolution in a manner that will have a concrete impact on the parties to the dispute." Moore's Federal Practice § 101.01 (2017 Update).

We address each of the Northern New Mexicans' five claims in turn.

### A. Administrative Procedure Act Claim

The district court dismissed the Northern New Mexicans' APA claim (as well as its Equal Protection Clause claim, discussed below) on the basis of sovereign immunity. We decline to address that difficult issue, as both claims can be resolved on other grounds.

A party may bring a claim under the APA only if the agency's decision is final. 5 U.S.C. § 704. In *Bennett v. Spear*, 520 U.S. 154 (1997), the Supreme Court explained the conditions that must be satisfied for an agency's action to be final: "First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.* at 177–78 (first quoting *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948); then quoting *Port of Bos. Marine Terminal Ass'n. v. Rederiaktiebolaget Transatl.*, 400 U.S. 62, 71 (1970)). Even a cursory review of the December 6, 2013 letter demonstrates that the BIA's action was not final, which means judicial review is not available at this time. The purpose of the letter is for the *County* to take action—specifically to "show cause" why the BIA should not assess trespass

damages and why the County should not be evicted from Pueblo land—not to notify the County of action the BIA has already taken. Indeed, the letter specifically encourages the County to work with the Pueblo: "We encourage the County to enter into negotiations with the Pueblo to resolve the current trespass as quickly as possible and establish legal bases for the County's continued use of Pueblo land." And the letter implies that if the County does not act, the case will be "turned over to the U.S. Department of Justice for action against the County." Aple. App. 4. Nowhere does the letter address any competing interests third parties might have in the use of the road, or what actions the BIA would take if provided with that information.

We therefore affirm the district court's dismissal of the Northern New Mexicans' APA claim, not because of sovereign immunity, but rather because this claim is not ripe for review.

### B. *Quiet Title Act Claim*

The Northern New Mexicans also alleged a Quiet Title Act claim in their complaint, and the district court dismissed this claim for lack of standing. On appeal, however, the Northern New Mexicans clarify that they are not seeking to quiet title in the roads.[1] *See* Aplt. Br. at 28 ("Contrary to the QTA-type of

---

[1] At oral argument, the Northern New Mexicans clarified that they are not claiming that their members own the roads; but rather, they are alleging their members hold a "use right" or "use interest" in public roads owned by Santa Fe County. Even if the organization had not waived this argument, however, the

(continued...)

allegations, Appellant never sought to quiet title in its own name as to the County Roads."); Reply Br. at 3 (titling a subsection of the brief, "Appellant Did Not Bring a QTA Claim").

We therefore hold that the Northern New Mexicans have waived their Quiet Title Act argument.

### C. Takings Claim

As an initial matter, the Northern New Mexicans likely conceded their Takings claim during oral argument before this court. *See* Oral Arg. at 6:05 (colloquy between the Northern New Mexicans' counsel and the panel). But even if the Northern New Mexicans had not conceded this argument, the organization would not be able to bring a Takings claim at this time. Under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), a Takings claim is premature unless the property owners have first brought suit for compensation under the Tucker Act, 28 U.S.C. § 1491. *Id.* at 195; *see also Schanzenbach v. Town of La Barge*, 706 F.3d 1277, 1281–82 (10th Cir. 2013) (stating that a claim under the Takings Clause is not ripe until the government has reached a final decision regarding the application of

---

[1](...continued)
Quiet Title Act claim would fail because the Northern New Mexicans do not have an ownership interest in the roads. *See Kinscherff v. United States*, 586 F.2d 159, 160–61 (10th Cir. 1978).

regulations to the property at issue and the plaintiff has sought just compensation through available procedures and has been denied relief).

Accordingly, the Northern New Mexicans' Takings claim is not yet ripe, and dismissal was proper.

### D. Equal Protection Claim

The Northern New Mexicans also assert a claim under the Equal Protection Clause, citing a number of venerable Equal Protection cases from the Supreme Court. But the Northern New Mexicans' complaint limits this claim to certain protections provided by "[t]he Treaty of Guadalupe Hidalgo," App. 17–18, and the organization fails to cite a case finding an implied right of action under that Treaty. As a general rule, treaties do not create privately enforceable rights in federal courts. *See Medellin v. Texas*, 552 U.S. 491, 505 (2008). This Treaty is no exception. *See O'Donnell v. United States*, 91 F.2d 14, 39 (9th Cir. 1936) ("All the authorities are agreed that the provisions of the Treaty of Guadalupe Hidalgo . . . are not self-executing."), *rev'd on other grounds*, 303 U.S. 501 (1938).

We therefore affirm the district court's dismissal of the Northern New Mexicans' Equal Protection claim.[2]

---

[2] Even if the Northern New Mexicans had not limited their Equal Protection claim to protections afforded by the Treaty of Guadalupe Hidalgo, their claim would still fail. Regardless of which level of Equal Protection review is appropriate, "to assert a viable equal protection claim, plaintiffs must first

(continued...)

### E. Fifth Amendment Due Process Claim

Finally, during oral argument, the Northern New Mexicans attempted to reframe their Takings claim as a claim arising under the Due Process Clause of the Fifth Amendment. But the Takings claim the Northern New Mexicans alleged in their complaint is not broad enough to encompass general due process jurisprudence. The claim is explicitly titled "taking of property without just compensation," and the allegations contained in the section specifically relate to Takings. App. 16–17. We therefore decline to address a Due Process Clause argument raised for the first time at oral argument. *See, e.g.*, *Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013) ("Conroy has not briefed any arguments pertaining to that claim, so we consider it abandoned.").

## III. Conclusion

We AFFIRM the district court's dismissal of this action without prejudice.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Chief Judge

---

[2](...continued) make a threshold showing that they were treated differently from others who were similarly situated to them." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998). The Northern New Mexicans have failed to allege such facts here.