Samuel COLLINS, Plaintiff,

v.

Robert D. HANNIGAN; Steve Dechant; Harvey Russell; Owen E. Carper; Jack Reeves; Dennis Goff, R.N.; Wayne Brawner, and Patricia Roberts.

No. 95–3225–JTM.

United States District Court, D. Kansas.

Aug. 7, 1998.

Samuel Collins, Winfield Correctional Facility, Winfield, KS, pro se.

James W. Coder, Office of Atty. Gen., Kansas Judicial Center, Topeka, KS, Lawrence J. Logback, Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., Wichita, KS, for Robert D. Hannigan, Steve DeChant, Harvey Russell, Jack Reeves, Wayne Brawner, Patricia Roberts.

Matthew L. Bretz, Juhnke & Bretz, Hutchinson, KS, Michael R. O'Neal, Gilliland & Hayes, P.A., Hutchinson, KS, for Owen E. Carper.

Gary M. Austerman, Mary T. Malicoat, Klenda, Mitchell, Austerman & Zuercher, L.L.C., Wichita, KS, for Dennis Goff, R.N.

*MEMORANDUM AND ORDER*

MARTEN, District Judge.

Samuel Collins brought this pro se prisoner action against a number of defendants, alleging his constitutional rights were violated by the defendants' responses to his health-related complaints, which ultimately resulted in a change in his security classification and placement at the Hutchinson Correctional Facility (HCF). The defendants moved for summary judgment and Collins has responded.

I. Summary Judgment Standard.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The initial burden is on the moving party to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the initial showing has been made, the burden shifts to the nonmoving party to designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. A party may not rely on the allegations of its pleadings but must establish the existence of a genuine issue of material fact through admissible evidence. *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995), *cert. denied,* 516 U.S. 1160, 116 S.Ct. 1045, 134 L.Ed.2d 192 (1996). When determining whether there is

a material issue of fact, the nonmoving party's evidence is to be believed; all justifiable inferences are to be drawn in its favor; and its nonconclusory version of any disputed issue of fact is assumed to be correct. *Multistate Legal Studies, Inc. v. Harcourt Brace Publ., Inc.,* 63 F.3d 1540, 1545 (10th Cir. 1995), *cert. denied,* 516 U.S. 1044, 116 S.Ct. 702, 133 L.Ed.2d 659 (1996).

II. Facts.

The following factual scenario is based on the relevant factual assertions of the parties, where supported by citations to admissible evidence and with all reasonable inferences drawn in Collins's favor. Collins submitted his complaint under penalty of perjury. Accordingly, all of the nonconclusory factual allegations contained in his complaint will be presumed to be true. Collins was a Black inmate at HCF–South. Collins had undergone bypass surgery and had a Class II medical status. An inmate in Class II status can generally participate in work and recreational programs, but may have certain specific restrictions. Inmates housed at HCF–South are required to participate in work programs, which typically involve cooking, cleaning and maintaining prison facilities. Collins stated that he performed his assigned tasks well, provided they were consistent with his medical restrictions.[1]

On March 20, 1995, Lieutenant Jack Reeves assigned Collins to sand and clean base boards. Collins told Reeves this would be against his medical work restrictions. Reeves checked with Dr. Owen E. Carper, who told him Collins could sand the base boards. Reeves instructed Collins to get to work. Collins complained that working on his hands and knees would make him dizzy. Reeves told Collins he could sit or lay down while sanding and that he could take rest breaks if necessary. Reeves instructed Collins to report to work and Collins did so.

Collins worked for about an hour and a half. He suffered attacks of dizziness. Collins took a rest break during the third attack. Officer Patricia Roberts ordered him to get

[1] Defendants strongly dispute Collins's statement that he performed his assigned tasks well. However, for summary judgment purposes the court must assume Collins was a hard and willing worker.

back to work and he did so. Shortly after resuming sanding, Collins sat down because he was so dizzy. Collins complained of chest pain and asked Roberts to summon medical assistance. Roberts waited 15 minutes before doing so.[2]

Dennis Goff, R.N., arrived at the scene. Collins was laying on the floor complaining of pain. He examined Collins and determined that his vital signs were normal. Goff directed Collins to get up and walk to the transport vehicle. Goff told prison officers not to assist Collins. Goff testified that he wanted to observe Collins walk to the vehicle, and that Collins did so without any difficulty. According to Collins, some officers eventually assisted him.

Collins was taken to the prison clinic for observation. Clinic staff observed no signs of distress or acute illness during a 23–hour observation period. Collins was released to housing at HCF–Central. The clinic is located in HCF–Central.

On March 21, 1995, Unit manager Wayne Brawner removed Collins's minimum security status. Minimum security status is required for placement in HCF–South. Brawner's affidavit indicates the change in status was made because Collins refused to work and in order to keep Collins close to medical facilities and personnel.

On March 24, 1995, Collins reported to sick call complaining of chest pains. Collins was examined by a nurse and an EKG was taken. Carper examined the chart and the EKG and determined that Collins was not in any acute distress. Dr. Carper changed Collins to Class III medical status. Carper did not personally examine Collins on March 24, 1995. On other occasions Collins sought to see Dr. Carper, but was instead examined by a nurse. Collins continued to have Class III medical status.

An individual with a Class III medical status will not normally be housed in HCF–South because it is farther away from the clinic and because Class III inmates cannot normally participate in prison work programs for health-related reasons.

Collins filed grievances and appeals, seeking his return to HCF–South and alleging he could participate in appropriate work programs and was not in such ill-health as to require Class III status. Defendants Harvey Russell, Robert Hannigan, and Steve Dechant participated in internal reviews of Collins's Class III medical designation and his transfer from HCF–South to HCF–Central. Collins was not granted the requested relief.

Collins alleges the defendants' actions and decisions were motivated by his race. In support, Collins cites evidence that a White inmate who is confined to a wheel chair was allowed to remain in HCF–South and participate in work programs tailored to his medical restrictions. The defendants admit that such a prisoner exists and the court will presume, because the defendants do not address it in the *Martinez* report, that the White inmate also has a Class III medical status. The defendants argue, without citing evidence, that the White inmate works well and cooperates with prison officials in efforts to accommodate his disability.

Collins also alleges the defendants were deliberately indifferent to his medical needs. Finally, Collins alleges he suffered damages because he was not allowed the same visitation privileges as inmates in HCF–South.

Collins is no longer confined at HCF. He is currently housed at the Winfield Correctional Facility. Carper and Goff are employed by Prison Health Services (PHS), which provides health care services at HCF. Defendants do not allege that PHS is a state agency.

<hr>

**2.** Roberts's version of events is substantially different. She claims she asked Collins if he wanted ed medical attention and he said no, but would she get him his nitro pills. She provided Collins with a pill, but did not see whether he took it. She asked Collins how he felt; had the nitro worked. Collins asked her to check if he could get in at the clinic. She left Collins to call the clinic. They told her Collins could report to sick

call or she could issue a medical emergency call. She returned to Collins and Officer Jackson was kneeling beside him. Jackson told Roberts to radio a medical emergency and she did so. Roberts estimated that five minutes passed between Collins's first complaints of chest pain and her summoning medical assistance. However, Collins's version must be presumed to be true for summary judgment purposes.

III. Analysis.

Liberally interpreting his complaint, Collins is asserting claims that (1) his due process rights were violated when his medical status and security status were changed without a hearing; (2) he was subjected to cruel and unusual punishment because he was deprived of medical care and because his visitation privileges were restricted; and (3) the decisions to change his classifications were motivated by his race in violation of the equal protection clause.

As an initial matter, Collins is no longer confined at HCF so his only available remedy is monetary damages. *See White v. Colorado,* 82 F.3d 364, 366 (10th Cir.1996). Defendants Hannigan, Dechant, Russell, Reeves, Brawner and Roberts (the "state defendants"), as state officials, may be entitled to qualified immunity on monetary damages claims. Defendants Carper and Goff, although they assert qualified immunity as a defense, are not entitled to qualified immunity in the absence of a showing that they were state officials or were subjected to substantial control by state officials. *See Richardson v. McKnight,* 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997) (private prison guards not entitled to qualified immunity). However, the court need not conduct a complex qualified immunity inquiry. As discussed below, Collins has failed to establish that his constitutional rights were violated by any of the defendants. Each of Collins's claims will be addressed in turn.

A. Due Process.

The Tenth Circuit has recently discussed how to evaluate whether a state has created a protected liberty interest such that an inmate is entitled to due process:

It is well-settled that the Due Process Clause shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as "liberty interests." *See Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Certain liberty interests—of which parole and probation are of greatest salience here—inhere in the Due Process Clause and are not subject to deprivation without adherence to the strict procedural safeguards of *Morrissey. See, e.g., Morrissey,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484; *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). More commonly, the liberty interests possessed by those living in prison are created, if at all, by state law. *See Sandin v. Conner,* 515 U.S. 472, 474–80, 115 S.Ct. 2293, 2296–99, 132 L.Ed.2d 418 (1995) (recounting development of caselaw). In *Sandin,* the Supreme Court markedly narrowed the ranges of circumstances that will give rise to state-created liberty interest. *See id.* at 480–81, 115 S.Ct. at 2299–2300 (holding that state-created liberty interests "will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").

*Harper v. Young,* 64 F.3d 563, 564 (10th Cir.1995) (footnotes omitted), *affirmed,* 520 U.S. 143, 117 S.Ct. 1148, 137 L.Ed.2d 270 (1997). *Harper* held that Oklahoma's pre-parole program created a liberty interest which inhered in the Due Process Clause.

Here, Collins is challenging changes in his medical and security classifications which resulted in his transfer from minimum security to maximum security. Collins was not transferred to solitary confinement. Allegations that Collins is confined with the general prison population, albeit in maximum security, do not by themselves establish that he is being subjected to conditions which impose an atypical and significant hardship in relation to the ordinary incidents of prison life. The only specific conditions that Collins complains about are his inability to participate in a work program and a shorter visitation period. Denial of eligibility to participate in an in-house prison work program is not an atypical and significant hardship and therefore does not raise due process concerns. *Penrod v. Zavaras,* 94 F.3d 1399, 1407 (10th Cir.1996). The court finds a shorter visitation period does not constitute an atypical and significant hardship. Collins has failed to allege sufficient facts to support a due process claim. All of the defendants are granted summary judgment on Collins's due process claims.

## B. Cruel and Unusual Punishment.

■ Prison officials are required to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care by taking reasonable measures to guarantee the inmate's safety. *Barney v. Pulsipher*, 143 F.3d 1299 (10th Cir.1998) (slip op.; publication pending). In order to establish an Eighth Amendment claim, the deprivation alleged must objectively be sufficiently serious. *Id.* The acts or omissions must be sufficiently harmful to the inmate. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir.1993) (pain incident to short delay in scheduling of elective surgery insufficient to support Eighth Amendment claim). In addition, the defendant must have subjectively acted with deliberate indifference to a substantial risk of serious harm to the inmate. *Barney, supra.*

■ Liberally interpreting his complaint, Collins first alleges that Reeves was deliberately indifferent to a serious risk of injury when he ordered Collins to clean the baseboards. First, there is no evidence that Collins suffered a serious injury. At best, Collins was dizzy and suffered some pain. There was no evidence that the pain was substantial and no evidence that Collins actually suffered a heart attack or other injury as a result. In other words, there is no evidence of serious harm to Collins as a result of Reeves's decision to assign him to cleaning the baseboards. Second, Reeves checked with Dr. Carper before ordering Collins to work. Where Reeves checked with Dr. Carper, he cannot be said to have acted with deliberate indifference. These are Collins's only factual allegations against Reeves. Accordingly, Reeves is entitled to summary judgment on all claims against him.

■ Collins next alleges that Dr. Carper was deliberately indifferent to a serious risk of harm when he told Reeves that Collins could clean the baseboards. As before, Collins has not alleged injuries that are sufficiently serious to raise Eighth Amendment concerns. In addition, Collins cannot show deliberate indifference. Collins himself argues that he could participate in the work program, but that certain tasks bothered him more than others. Thus, Dr. Carper was at most negligent in failing to recognize that cleaning baseboards was more likely to cause Collins to suffer dizziness and pain than other tasks in the work program. Negligent medical treatment is insufficient to support an Eighth Amendment claim. *Ramos v. Lamm*, 639 F.2d 559 (10th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). Collins's other Eighth Amendment claims against Dr. Carper fail for the same reason. Dr. Carper's decisions to place Collins in a certain medical classification and to not examine Collins based on nurse evaluations are not evidence of deliberate indifference to Collins's condition, even if Carper was wrong. Furthermore, there is no evidence that Collins suffered any pain or medical injuries as a result of these decisions. Dr. Carper is entitled to summary judgment on Collins's Eighth Amendment claims.

■ Collins next alleges that Roberts was deliberately indifferent to his pain and suffering when she waited 15 minutes before summoning medical assistance.[3] This claim fails because Collins cannot show that his injury was sufficiently severe or even that he suffered any injury as a result of Roberts's alleged delay. The medical examination revealed no indications that Collins was in severe distress or had suffered any serious injury. In fact, his vital signs were normal. Collins was simply admitted to the clinic for observation. If Roberts had immediately summoned assistance, Collins would not have suffered any less pain. Collins makes no other factually supported allegations against Roberts. Accordingly, Roberts is entitled to summary judgment on all claims.

■ Collins next argues that Goff's examination was insufficient and that Goff's request that he walk to the van constituted cruel and unusual punishment. If Goff failed to properly perform the examination, this is evidence of negligence and does not rise to the level of an Eighth Amendment claim. Collins testified that other officers helped him to the van. Thus, any claim based on Goff forcing Collins to walk to the van is contradicted by Collins's own testimony. These are the only factual allegations directed at Goff and he is entitled to summary

3. As previously noted, Roberts's version of events differs substantially from Collins's version.

judgment on all claims. This disposes of all of Collins's Eighth Amendment claims.

## C. Equal Protection.

The equal protection clause requires that no state deny any person within its jurisdiction the equal protection of the laws. An equal protection violation occurs when the government treats someone differently than another who is similarly situated. *Penrod,* 94 F.3d at 1406; *Williams v. Meese,* 926 F.2d 994, 998 (10th Cir.1991). Collins's equal protection claims fail because he has not shown that the White inmate was similarly situated.

Prison officials, including medical officials, evaluated Collins's condition and determined what job restrictions were appropriate for him. Collins had a heart condition. On at least one occasion, Collins disagreed with their determinations and complained. He did, however, attempt to perform the assigned job. During the attempt, Collins began to experience chest pain and had to be transported to the clinic. Prison health officials determined that Collins should be housed in close proximity to the clinic. Prison security officials determined that Collins should be transferred to HCF–Central because of his health related problems and his inability to successfully participate in the work program.

The White inmate is in a wheel chair and prison officials similarly evaluated his condition and determined what jobs he could perform. Collins cites no evidence that the White inmate disagreed with prison officials over what tasks he could perform. He cites no evidence that the White inmate experienced pain or was otherwise unable to complete his assigned tasks. Finally, Collins cites no evidence that the White inmate's condition required that the inmate be located close to the prison clinic. Accordingly, the defendants are entitled to summary judgment on Collins's equal protection claim.

There is no evidence that the reviewing prison officials based their decisions not to grant Collins's requests for relief on race or anything other than Collins's medical condition and the reported history of his lackluster participation in the work program. Accord-

ingly, the reviewing prison officials are entitled to summary judgment.

IT IS ACCORDINGLY ORDERED this 7th day of August, 1998, that the defendants' motions for summary judgment are granted. It is further ordered that defendant Goff's motion pursuant to "K.S.A. Chapter 60" is denied as moot.[4]

---

4. The motion was based on two inaccurate premises: (1) that Collins had failed to respond to the motion for summary judgment; and (2) that Chapter 60's procedural rules are applicable in Federal Court. It would have been denied in any event.