**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 17 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GUILLERMO R. ZUNIGA,

      Plaintiff-Appellee,

v.

THE CITY OF MIDWEST CITY,

      Defendant-Appellant.

Nos.  01-6303 & 02-6076
(D.C. No. 00-CV-1435-M)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **HENRY** , **BRISCOE** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore

ordered submitted without oral argument.

Defendant-appellant City of Midwest City, Oklahoma (Midwest), appeals

the judgment entered against it on plaintiff-appellee Guillermo R. Zuniga's

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

unlawful arrest and search claims under 42 U.S.C. § 1983. Midwest also appeals

the district court's award of attorney's fees to Zuniga under 42 U.S.C. § 1988 and

its award of costs to Zuniga under Fed. R. Civ. P. 54(d)(1). Our jurisdiction

arises under 28 U.S.C. § 1291. We conclude that Zuniga presented insufficient

evidence at trial to support the jury's finding of municipal liability under § 1983,

and that the district court therefore erred in failing to grant Midwest's motion

under Fed. R. Civ. P. 50(a) for judgment as a matter of law. Accordingly, we

reverse the judgment entered against Midwest on Zuniga's § 1983 claims, and

we remand this matter to the district court with directions to enter judgment in

favor of Midwest on the § 1983 claims. [1] In light of this disposition, we also

vacate the awards of attorney's fees and costs to Zuniga. [2]

## I.

On the evening of September 21, 1999, Midwest police officers responded

to the scene of an alleged theft of water from a city fire hydrant. Officer Pamela

Wilson was the first officer to arrive at the scene, and she was told by an

employee of the Midwest water department that he had observed a fire hose

---

[1] Midwest is not appealing the judgment entered against it on Zuniga's state claim for false arrest. Zuniga is not appealing the judgment entered in favor of Midwest on his federal and state claims for illegal search of his vehicle. Those judgments are therefore not at issue as part of this appeal.

[2] We leave any further consideration of awards of costs or attorney's fees to the district court on remand.

hooked up to the hydrant and two men, who were later identified as Fidencio De La Rosa and Cordero Castillo, turning off the hydrant with a wrench. Officer Wilson observed a fire hose laying on the ground next to the hydrant, a truck parked next to the hydrant with a trailer containing a water tank, and water on the ground near the hydrant. Officer Wilson asked De La Rosa and Castillo what they were doing, and De La Rosa told her they were taking water.

Detective Kenneth Sloan of the Midwest Police Department subsequently arrived at the scene. After determining that De La Rosa was able to speak some English and that Castillo spoke no English, Detective Sloan asked De La Rosa who had given them permission to take water from the hydrant. De La Rosa responded that "Memo" had given them permission "[a]nd then eventually he said either 'supervisor' or 'boss.'" Aplt. App., Vol. II, at 237.

Zuniga, De La Rosa, and Castillo were employees of a company called Bill's Parking Lot Maintenance, and their supervisor, Mike Larsen, subsequently arrived at the scene. Larsen told Detective Sloan that "Memo" was a nickname for Zuniga, and he confirmed that Zuniga was the immediate supervisor of De La Rosa and Castillo. Larsen also stated that he and Zuniga were working at a job site that evening, and that he had directed Zuniga to call De La Rosa and Castillo and have them fill the water tank and bring it to the job site. Larsen denied that he had instructed Zuniga to have De La Rosa and Castillo take water from the

-3-

hydrant. Instead, according to Larsen, they were to get the water from a water tank located on the premises of Bill's Parking Lot Maintenance.

In the meantime, Sergeant Kenny Wynns of the Midwest Police Department and Zuniga arrived at the scene. After learning what De La Rosa had told Detective Sloan, Sergeant Wynns told Zuniga that De La Rosa had told Detective Sloan that Zuniga was the one who gave the instructions to take water from the hydrant. According to Sergeant Wynns, Zuniga then confirmed that "possibly two to three times he's done that." *Id.* at 188. Sergeant Wynns interpreted Zuniga's statement as verifying that he had instructed De La Rosa and Castillo to take water from the hydrant that night. *Id.* at 188, 200. Zuniga denies that he told Sergeant Wynns at the scene that he had instructed De La Rosa and Castillo to take water from the hydrant that night. *Id.*, Vol. III, at 508-09, 528.

Although they believed, based on the information they learned at the scene, that they had probable cause to arrest Zuniga for the felony offense of conspiring to commit an offense against the State of Oklahoma, *see* Okla. Stat. Ann. tit. 21, § 424, Sergeant Wynns and Detective Sloan did not intend to have Zuniga arrested and taken into custody. Instead, they only wanted to have him transported to the police station so that he could give a voluntary statement. However, because of mistakes made at the scene and a breakdown in communication among the responding officers, an unidentified officer handcuffed

-4-

Zuniga and placed him under arrest. Zuniga was then transported in handcuffs to the city jail, and he was placed in a processing room and searched. After being informed by another officer that Zuniga had been mistakenly transported to the jail, Sergeant Wynns had him removed from the jail and taken to the police station so that he could be interviewed by Detective Sloan.

Zuniga was never charged with a crime in connection with the events that occurred on September 21, 1999. Although De La Rosa and Castillo were arrested and charged with the misdemeanor offenses of petty larceny and tampering with city utilities, they were subsequently released to the Immigration and Naturalization Service, and they were never prosecuted for the misdemeanor charges.

In this § 1983 case, Zuniga asserted the following claims against Midwest: (1) federal and state claims for false arrest; (2) a federal claim for illegal search of his person; and (3) federal and state claims for illegal search of his vehicle. The claims were tried to a jury, and the jury returned a verdict in favor of Zuniga on his federal and state claims for false arrest and his federal claim for illegal search of his person. The jury awarded Zuniga no actual damages and nominal damages of $1.00 on his § 1983 claims. Zuniga then moved for an award of costs and attorney's fees as the prevailing party in terms of the overall success achieved

in the litigation, and the district court awarded him $89,350.25 in attorney's fees under § 1988 and $2,786.19 in costs under Rule 54(d)(1).

II.

"A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998). A plaintiff can "use a municipality's failure to train as one way to make the required showing that a municipal policy or custom was the 'moving force' behind an already established constitutional deprivation." *Id.* at 1317. However, "the failure to train must amount to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 1318 (quotation omitted).

At trial, Zuniga asserted two grounds for imposing municipal liability on Midwest under § 1983: (1) that he was arrested without probable cause pursuant to a policy or custom of Midwest; and (2) that he was arrested without probable cause as the result of Midwest's failure to adequately train its police officers. The district court properly instructed the jury regarding the required elements for both of Zuniga's claims, and Midwest only claims that Zuniga failed to put forth sufficient evidence to support his claims. After carefully reviewing the trial

-6-

testimony and evidence and the pertinent legal authorities, we agree with Midwest that there was insufficient evidence to support Zuniga's municipal liability claims.

At the conclusion of Zuniga's case and at the close of all the evidence, Midwest moved under Rule 50(a) for judgment as a matter of law (JMOL) on Zuniga's § 1983 claims, arguing that, even if Zuniga was placed in a full custodial arrest, there was insufficient evidence that he was arrested without probable cause in violation of the Fourth Amendment.[3] In the alternative, Midwest argued that, even if the arrest, and the related search incident to the arrest, were unlawful, there was insufficient evidence to impose municipal liability under § 1983 because there was no evidence that the arrest was the result of a policy or custom of Midwest or a lack of police training. The district court denied Midwest's Rule 50(a) motion, and Zuniga's municipal liability claims were submitted to the jury.

"Rule 50(a)(1) permits judgment as a matter of law during trial when a party has been fully heard on an issue and 'there is no legally sufficient

---

[3] Under the Fourth Amendment, "[a] police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). "Probable cause exists if the facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* (quotation omitted).

evidentiary basis for a reasonable jury to find for that party on that issue.'"

*Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1278 (10th Cir. 2003) (quoting Fed. R. Civ. P. 50(a)(1)).

> This court reviews *de novo* the denial of a motion for JMOL. In reviewing the district court's refusal to grant JMOL, this court draws all reasonable inferences in favor of the nonmoving party. Further, this court does not weigh the evidence, pass on the credibility of the witnesses, or substitute its conclusions for that of the jury. The district court's refusal to grant JMOL will only be reversed if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion.

*Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1279 (10th Cir. 2003) (citation and quotations omitted).

We agree with the district court that Zuniga presented sufficient evidence at trial to overcome Midwest's Rule 50(a) motion with respect to the first prong of his municipal liability claim, that is, that one or more of the Midwest police officers violated his Fourth Amendment rights by arresting him without probable cause. Specifically, construing the evidence in the light most favorable to Zuniga, the jury could have found that: (1) the officers could not reasonably have relied on De La Rosa's statement to Detective Sloan to establish probable cause to arrest Zuniga because it was established at trial that De La Rosa spoke very little English and Detective Sloan admitted in his trial testimony that he had difficulty understanding De La Rosa when he spoke to him at the scene, *see* Aplt. App., Vol. II, at 237, 270; and (2) the officers could not reasonably have relied on

Zuniga's statement at the scene to Sergeant Wynns because Sergeant Wynns admitted during his trial testimony that he only made an "assumption" that Zuniga was referring to the evening in question when he said he had instructed De La Rosa and Castillo to take water from the hydrant, *see id.* at 213-14. In addition, Zuniga denied during his trial testimony that he told Sergeant Wynns that he had instructed De La Rosa and Castillo to take water from the hydrant that night. *See id.*, Vol. III, at 508-09, 528, 586. Consequently, the testimony of Wynns and Zuniga was in conflict, and the district court acted correctly in submitting the credibility determination of who to believe to the jury.

Nonetheless, we disagree with the district court that Zuniga presented sufficient evidence to overcome Midwest's Rule 50(a) motion with respect to the second prong of his municipal liability claim, that is, that he was unlawfully arrested as the result of a municipal policy or custom, and/or that he was unlawfully arrested as the result of inadequate police training. First, Zuniga presented no evidence showing that Midwest had an unconstitutional or illegal policy or custom that was the moving force behind his arrest as is required to establish municipal liability under § 1983. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (noting that municipality may be held liable under § 1983 "only for its own unconstitutional or illegal policies"). To the contrary, the undisputed evidence at trial established that Zuniga was arrested by mistake,

and, as the Chief of Police, Brandon Clabes, testified, Zuniga's mistaken arrest was apparently the first such incident of its kind that the Midwest Police Department had ever experienced. *See* Aplt. App., Vol. III, at 45. Thus, while other testimony at trial established that the police officers at the scene may have violated certain internal departmental policies or procedures requiring that officers use interpreters when interrogating non-English speaking persons, that officers know the charges that are going to be filed against an arrested suspect before transporting the suspect to jail, and that officers not arrest and take into custody a suspect who has agreed to provide a voluntary statement, Zuniga put forth no evidence showing that the officers acted in an unconstitutional manner pursuant to an official municipal policy or custom. *Camfield v. City of Okla. City*, 248 F.3d 1214, 1229 (10th Cir. 2001) (noting that a "plaintiff must show that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution").

Second, while the parties stipulated to the admission of certain training records for Sergeant Wynns, Detective Sloan, Officer Wilson, and other officers involved in Zuniga's arrest, *see* Aplt. App., Vol. I, at 288-311, Zuniga made no effort during the trial to specifically link the actual training provided to these officers, or any alleged lack of training, to the events surrounding his arrest. Further, Zuniga made no showing of any deliberate indifference on the part of the

-10-

Midwest Police Department with respect to training. Instead, Zuniga simply asserted in conclusory fashion that, because the Midwest police officers made a mistake in arresting Zuniga and thereby may have violated certain internal departmental policies, they were not adequately trained. This is not sufficient for purposes of imposing municipal liability under § 1983 for a failure to train. *See Barney*, 143 F.3d at 1307 (noting that a municipality's failure to train "must reflect a deliberate or conscious choice by the municipality") (quotation omitted).

The judgment entered against Midwest on Zuniga's § 1983 claims is REVERSED, and we REMAND this matter to the district court with directions to enter judgment in favor of Midwest on the § 1983 claims. We also VACATE the awards of attorney's fees and costs to Zuniga.

Entered for the Court

Mary Beck Briscoe
Circuit Judge